UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

LEO MICHAEL AMBLER,

        Plaintiff,                     Case No. 2:16-cv-148

v.                                       Honorable Paul L. Maloney

HEIDI WASHINGTON, et al.,

        Defendants.

_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Leo Michael Ambler, a state prisoner currently confined at the Chippewa Correctional Facility (URF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants MDOC Director Heidi Washington, Michigan Reformatory (RMI) Warden Carmen Palmer[1], RMI Deputy Warden Gregory Skipper, RMI Deputy Warden Scott Schooley, RMI Classification Director N. Marshall, RMI Resident Unit Manager Rob Sutherland, RMI Corrections Officer Unknown Trieweiler, RMI Food Service Supervisor James Montgomery, RMI Food Service Supervisor Unknown North, RMI Food Service Supervisor Unknown Kurr, RMI Food Service Supervisor Unknown LaRoe, Kinross Correctional Facility (KCF) Warden Duncan MacLaren, KCF Deputy Warden Kathy Olson, KCF Administrative Assistant David Mastaw, KCF Grievance Coordinator Louis Berlinger[2], KCF Assistant Resident Unit Manager Patrick Harrington, KCF Resident Unit Manager Marquita Malette, KCF Lieutenant Stephanie Touri, KCF Corrections Officer Martin Miller, KCF Corrections Officer Michelle Hoey, KCF Corrections Officer Unknown Bury, KCF Corrections Officer James Corrigan, Alger Correctional Facility (LMF) Warden Catherine Bauman, LMF Deputy Warden Anthony Immel, LMF Resident Unit Manager G. Schram, LMF Assistant Resident Unit Supervisor P. Hubble, LMF Mailroom Office Assistant C. White, LMF Mailroom Office Assistant J. Lundquist, LMF Administrative Assistant Dean Potila, and LMF Corrections Officer Lyle Rutter.

In Plaintiff's complaint, he alleges that he was transferred to RMI in July of 2013, and was classified to work in Food Service by Defendant Marshall. On December 8, 2013, Plaintiff began working

---

[1] Also spelled Plamer in the caption of the complaint.

[2] Also spelled Berliner in the caption of the complaint.

under the direct supervision of Defendants Montgomery, Kurr, and LaRoe. Plaintiff spoke with Defendants Kurr regarding his prior experience as a food service clerk. Defendant Kurr and Food Service Supervisor Harkrader told Plaintiff that he could work as a food service clerk part-time until he passed a security clearance. On April 15, 2014, Plaintiff was told that he had not been cleared for the job of food service clerk. Plaintiff sought an explanation from Defendant Marshall, but did not receive a satisfactory explanation. Plaintiff filed a grievance. Defendant Skipper responded to the grievance and informed Plaintiff that no explanation needed to be given.

On April 21, 2014, Plaintiff witnessed Defendant Montgomery engage in a disagreement with another prisoner, during which he swore at the prisoner and ordered him into the office. The incident was also witnessed by Defendants Kurr, LaRoe, and Trieweiler. Plaintiff was questioned about the incident by Thomsen. On April 23, 2014, Plaintiff was told that Defendant Schooley had laid him in from his work assignment. On April 24, 2014, Plaintiff asked Defendant Kurr about the lay-in during breakfast. Defendant Kurr stated that she did not know about the lay-in and would try to find out. During lunch, Defendant Kurr told Plaintiff that Food Service Supervisors Corder and Harkrader had contacted Defendant Marshall, and that no one knew of any suspension. Plaintiff was told to report for work the next day.

Plaintiff worked his food service detail from April 25, 2014, until April 28, 2014, without incident. However, on April 28, 2014, Defendant Schooley called Plaintiff into his office and told him that he was suspended because Defendant Schooley would "not have a prisoner working in Food Service who makes allegations of wrong doing against a staff member." Plaintiff attempted to explain that he had not accused Defendant Montgomery of threatening him, and that it was another prisoner and Plaintiff was

- 3 -

merely a witness. However, Defendant Schooley accused Plaintiff of changing his story and ordered him to leave the school building. When Plaintiff went to retrieve his ID card, Defendant LaRoe asked him what had happened, but when Plaintiff attempted to explain, Defendant Schooley appeared and ordered Plaintiff to leave immediately. Plaintiff filed a grievance.

On May 9, 2014, Plaintiff's work detail was officially cancelled and he was reclassified to the jobs of Library Aide and Gym Porter. On May 13, 2014, Defendant Marshall interviewed Plaintiff on his grievance and stated, "You accused an employee of inappropriate behavior, which if found valid would potentially lead to discharge of the employee. An investigation of the incident through video and eyewitnesses did not validate your claim." On May 22, 2014, Plaintiff was transferred to KCF, despite the fact that he had not requested a transfer and was not eligible for placement into a transfer pool until July 5, 2014. The reason given for the transfer was to accommodate bed space for a "force feed" from another prison.

On June 16, 2014, Plaintiff gave Defendant Harrington a statement describing an incident with some prisoners at the R. A. Handlon Correctional Facility (MTU) the previous year, and indicating that he was currently being threatened by associates of those individuals. On November 10, 2014, Plaintiff was approached by two unknown black prisoners, who told him that if he wanted to stay on the KCF yard, he would have to start paying protection. When Plaintiff returned to his cell, he discovered that his wall locker had been broken into and his cellmate, prisoner Hawk, was agitated. Plaintiff found much of his personal property was missing and began to pack his remaining property in a duffle bag and two footlockers. Plaintiff then went to the officers' desk and told Defendants Hoey and Miller about the threats and the destruction of his locker. Plaintiff stated that he no longer felt safe in the unit or facility. Defendant

Hoey called for Defendant Touri and took Plaintiff to his cell to secure his property. Defendant Hoey told Plaintiff that his property would be secured in Defendant Harrington's office and sent Plaintiff to the office to talk to Defendant Touri. Plaintiff was then taken to a protection cell by Defendant Miller.

On November 14, 2014, Plaintiff sent a written request to Defendant Berlinger for a DTMB-1104 form to file an Administrative Board Prisoner Property Claim. However, Defendant Berlinger did not respond. In addition, Plaintiff was seen by Defendants Olson and Malette regarding the loss of his property. Defendant Malett told Plaintiff that it was a dog-eat-dog world and that Plaintiff should go back to the yard. Plaintiff was given a direct order to leave segregation later that day, but Plaintiff refused. Plaintiff received a class II misconduct for disobeying a direct order. Plaintiff's misconduct was reviewed by Defendant Touri, who elevated it to a class I, stating that Plaintiff was unmanageable and refused to follow staff direction.

On November 18, 2014, Plaintiff sent a second request for a DTMB-1104 form to file an Administrative Board Prisoner Property Claim. Defendant Berlinger subsequently returned the second request along with a response which improperly directed Plaintiff to file a grievance explaining the loss and identifying the staff who were responsible. Plaintiff filed a grievance in compliance with Defendant Berlinger's instructions, even though he was aware that they were contrary to departmental practice.

On November 20, 2014, Plaintiff was given 10 days segregation for the class I misconduct. On November 21, 2014, Plaintiff was told that he was to be confined in administrative segregation pending a transfer to another facility. On November 26, 2014, Plaintiff was transferred to LMF. Plaintiff received his personal property, which was opened to search for contraband. Plaintiff noticed that some items were missing from his duffel bag. However, property belonging to his former cellmate Hawk, who as also being

transferred, was searched at the same time. During the search, Plaintiff noticed that some of his stolen property was in Defendant Hawk's possession. On November 27, 2014, Plaintiff sent a written notice to Defendant Rutter at LMF regarding the property in prisoner Hawk's possession. On November 30, 2014, Plaintiff filed a grievance on Defendant Bury regarding the property which was missing from his duffle bag. Plaintiff also filed a grievance on Defendant Berlinger for failing to provide him with a DTMB-1104 form.

Plaintiff's grievance against Defendant Hoey and Miller for the initial loss of his property was denied by Defendants Harrington and Malette, who did not address the damage to the locker where the property had been stolen, but instead noted that there had been no damage to Plaintiff's segregation locker. Defendants Mastaw and Olson denied Plaintiff's grievance against Defendant Berlinger.

On January 8, 2015, Plaintiff plugged his new MP3 player into the Alger kiosk to download his personal music catalog. When Plaintiff checked his System Message logs, he discovered that his stolen MP3 player had been plugged into the KCF kiosk on November 27, 2014. Plaintiff mailed a letter to ACCESS Corrections Company to obtain a printout of the system messages from November 10, 2014, until January 8, 2015. Plaintiff received a reply indicating that the system messages are not archived and that the deactivation protocols regarding the stolen MP3 player were activated on December 15, 2014, after LMF staff contacted ACCESS to report the theft.

Plaintiff received a denial of his grievance against Defendant Bury on January 12, 2015, which was signed by Defendants Harrington and Malette. Plaintiff requested a step II appeal form from Defendant Berlinger, but received no response. On January 13, 2015, Plaintiff sent a letter to Defendant Corrigan regarding the stolen MP3 player. However, Plaintiff never received a response. Plaintiff's grievance appeals regarding the loss of property were denied and Plaintiff was not given a DTMB-1104

form. Plaintiff also claims that he was not authorized to petition the Prisoner Benefit Fund for reimbursement. Defendant Olson stated that Plaintiff was at fault for failing to follow staff instructions in requesting a DTMB-1104 form, and that Defendant Berlinger was not at fault. On July 9, 2015, Plaintiff filed a complaint with the Michigan Court of Claims, which was dismissed on August 25, 2015, pursuant to a motion for summary disposition by Defendants.

In May of 2015, Plaintiff's father ordered a legal manual called, "Section 1983 Litigation in a Nutshell," for Plaintiff. On July 4, 2015, Plaintiff sent a written inquiry to the Alger Mailroom regarding this book. Defendant White responded that he had made inquiries but had not discovered the whereabouts of the book. On August 10, 2015, Plaintiff's father ordered a second legal guide book from Amazon to be sent to Plaintiff at LMF. On August 12, 2015, Plaintiff was transferred from LMF to URF. On August 13, 2015, the book arrived at LMF and was signed for by "BYE." On August 29, Plaintiff received email from his father regarding the second book. On August 30, 2015, Plaintiff submitted a written request to URF for a claim status check of the book. On September 1, 2015, Plaintiff sent a letter to Richard Russell, manager of the grievance section, regarding the status of his step III appeals.

Plaintiff's father contacted officials at LMF and URF in an attempt to track down the book that he had ordered for Plaintiff. On September 13, 2015, Plaintiff sent an inquiry to the URF mailroom regarding the missing book. Plaintiff also filed a grievance regarding the issue with LMF Grievance Coordinator Bonevelle. On September 29, 2015, Defendant Hubble responded to the grievance by stating that the book had been forwarded to URF by Defendant Lundquist. However, Plaintiff asserts that Defendant Lundquist had previously told Plaintiff's father that she had no record of the book. Also on September 29, 2015, Defendant Potila sent a letter to Plaintiff's father claiming that there were no records

of the missing book coming into LMF and that no one with the initials "BYE" works in the warehouse or mailroom.

On October 3, 2015, Plaintiff's father ordered a third copy of the book from Amazon. The book was misdirected to LMF, but was eventually forwarded to Plaintiff at URF. Plaintiff was called to the property room to pick up the book on October 20, 2015. Plaintiff and his father continued to contact prison officials in an effort to discover what had happened with the two missing books. Finally, on January 8, 2016, Plaintiff's father received a response from Defendant Potila stating that he had identified the employee who signed for the missing books and that a system was being implemented to track books from arrival to delivery. Plaintiff contends that Defendant Potila had previously told Plaintiff's father that such a system was already in place when the books disappeared. Plaintiff's father sent a letter to Defendant Washington, asking for an investigation.

Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution. Plaintiff seeks compensatory, punitive, and nominal damages, as well as declaratory and injunctive relief.

## Discussion

I.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Initially, the Court notes that Plaintiff's claims against Defendants Washington, Palmer, Marshall, Sutherland, Trieweiler, North, MacLaren, Olson, Mastaw, Corrigan, Bauman, Immel, Schram, Hubble, White, and Rutter are all based on the supervisory nature of their jobs, the fact that they were present during the

incident between Defendant Montgomery and another prisoner, or their response or lack thereof to Plaintiff's grievances and other written inquiries. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Washington, Palmer, Marshall, Sutherland, Trieweiler, North, MacLaren, Olson, Mastaw, Corrigan, Bauman, Immel, Schram, Hubble, White, and Rutter engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Plaintiff claims that Defendants Schooley, Skipper, Montgomery, Kurr, LaRoe, Hoey, Miller, Berlinger, Malette, Harrington, Touri, and Bury violated his Eighth Amendment rights. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits

conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff claims that his transfer from RMI to KCF at the behest of Defendants Schooley, and Skipper, Defendant Montgomery's use of abusive and aggressive language against prisoner Langelle in Plaintiff's presence, Defendant Berlinger's failure to follow procedural rules, and that failure of Defendants Kurr, LaRoe, Hoey, Miller, Malette, Harrington, Touri, and Bury to intervene on Plaintiff's behalf or to properly investigate the situation violated the Eighth Amendment. However, for the reasons stated above, such allegations do not rise to the level of an Eighth Amendment violation. Therefore, Plaintiff's Eighth Amendment claims are properly dismissed.

Plaintiff also claims that Defendants retaliated against him in violation of the First Amendment by transferring him from RMI to KCF. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Plaintiff merely alleges the ultimate fact of retaliation in this action. Plaintiff fails to allege any specific facts regarding the

involvement of any of the named Defendants in his transfer. The reason for his transfer was reportedly to accommodate bed space for a "force feed" from another prison. Plaintiff has not presented any facts to support his conclusion that Defendants retaliated against him for engaging in protected conduct. Accordingly, his speculative allegation fails to state a claim.

Plaintiff also claims that his transfer from RMI to KCF violated his due process rights. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Here, Plaintiff clearly has failed to suggest that his transfer to KCF imposes an atypical and significant hardship. Plaintiff makes a vague and conclusory assertion that KCF is a "disciplinary facility . . . known for gang violence." However, Plaintiff does not allege that he was subjected to conditions which constitute an atypical and significant hardship.

Plaintiff also claims that the loss of his job in the RMI kitchen violated his due process rights. The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730 at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment.

Plaintiff also claims that his due process rights were violated by the loss of personal property, as well as two of the books that had been ordered for him by his father. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's

claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480.

Plaintiff alleges that state post-deprivation remedies are inadequate because he was not given permission to petition the Prisoner Benefit Fund, the State Administrative Board may only grant compensatory damages, and the Court of Claims does not have jurisdiction to grant injunctive or declaratory relief, or to award punitive damages. However, in order to satisfy due process, the post-deprivation remedy does not have to guarantee a successful outcome, nor is it required to provide relief equivalent to that available in a § 1983 action. *See Parratt*, 451 U.S. at 543-44. As the Court has

instructed: "Although the state remedies may not provide . . . all the relief which may have been available . . . under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process." *Parratt*, 451 U.S. at 544. Due process only requires that an adequate post-deprivation remedy be available when the deprivation of property occurs. *Id.* at 544. The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995). Because there were an adequate post-deprivation remedies available to Plaintiff, his due process claim for the deprivation of his property will be dismissed.

Plaintiff also asserts a violation of his substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth

Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there are specific constitutional amendments that apply to Plaintiff's claims. For example, as discussed above, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning his "deliberate indifference" claims. *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal). Similarly, the First Amendment provides an explicit textual source of constitutional protection for Plaintiff's retaliation claims. Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied. *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim."). Likewise, the Fourteenth Amendment Procedural Due Process Clause would apply to protect Plaintiff's rights with regard to his transfer, as well as with regard to the loss of his property. Consequently, Plaintiff's substantive due process claims will be dismissed.

Plaintiff repeatedly asserts that Defendants did not properly respond to grievances and interfered with his use of the grievance procedure. The courts repeatedly have held that there exists no

constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 Fed. App'x 411, 415-416 (6th Cir. 2014) (citing *North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n. 6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff

were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim regarding Defendants' handling of his grievances.

Finally, Plaintiff claims that Defendants' conduct violated his rights under state law. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983. Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations

weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice to his ability to bring the claims in state court.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:   October 11, 2016            /s/ Paul L. Maloney
                                     Paul L. Maloney
                                     United States District Judge